IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRAIRIE MANAGEMENT & DEVELOPMENT, INC., ROCKWELL PROPERTIES, LLC, SCOTTSDALE INSURANCE COMPANY, and WESTFIELD INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>COLUMBIA INSURANCE GROUP, INC.,<br><br>Defendant.<br><br>_____<br><br>LIBERTY INSURANCE UNDERWRITERS INC.<br><br>Plaintiff,<br><br>v.<br><br>COLUMBIA MUTUAL INSURANCE CO.,<br><br>Defendant. | Case No. 1:23-cv-00053<br><br><br><br><br>Consolidated with:<br><br><br><br><br>Case No. 1:23-cv-02528 |

**FIRST AMENDED COMPLAINT**

Plaintiff, LIBERTY INSURANCE UNDERWRITERS INC. ("Liberty"), by and through its undersigned counsel, brings this Complaint against Defendant COLUMBIA MUTUAL INSURANCE CO. ("Columbia"), and alleges and states as follows:

1. This is an action to recover sums from an insurer, Columbia, which in connection with an underlying tort lawsuit captioned *Guzman, et al., v. Prairie Management & Development, Inc., et al.*, Cir. Ct. Cook Cnty. No. 2017-L-003510 ("Guzman Lawsuit"), wrongfully refused to honor its obligations to its additional insured, Prairie Management & Development, Inc. ("Prairie"), under a contractors businessowners insurance policy.

2. Unfortunately, this is not the first time Columbia's coverage obligations to Prairie in connection with the Guzman Lawsuit have been the subject of litigation. Following Columbia's initial refusal to defend Prairie, Scottsdale Insurance Company ("Scottsdale") sued it in this very district, seeking a declaratory judgment that Columbia had a duty to defend Prairie in the Guzman Lawsuit. *See Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc. et al.*, case no. 1:18-cv-03657 (the "Duty to Defend Action"). In accordance therewith, Judge John Z. Lee entered judgment declaring that Columbia must defend Prairie in the Guzman Lawsuit, and the Court of Appeals for the Seventh Circuit affirmed that judgment. *See Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc. et al.*, 402 F. Supp. 3d 656 (N.D. Ill. 2019), *aff'd*, 972 F.3d 915 (7th Cir. 2020).

3. Failing to learn its lesson from the Seventh Circuit in the Duty to Defend Action, Columbia subsequently announced that it would not indemnify Prairie in the Guzman Lawsuit, basing its coverage position on its previously asserted interpretation of its policy language; *i.e.*, an interpretation expressly rejected by Judge Lee and the Seventh Circuit.

4. To protect Prairie from an excess verdict, Liberty paid to settle the Guzman Lawsuit on Prairie's behalf sums that should have been paid by Columbia.

5. In consideration for Liberty's settlement payment, Prairie contractually assigned its rights against Columbia to Liberty. Liberty, individually and as assignee of Prairie, now seeks against Columbia a judgment for that settlement payment.

6. Liberty is also now equitably subrogated to the rights of Prairie under Columbia's policy. Liberty, individually and as subrogee of Prairie, now seeks against Columbia a judgment for that settlement payment.

**PARTIES**

7. Liberty is an Illinois corporation with its principal place of business in Massachusetts.

8. Columbia is a Missouri corporation with its principal place of business in Missouri.

**JURISDICTION & VENUE**

9. Jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332(a)(1) because: (a) there is complete diversity of citizenship between Liberty and Columbia; and (b) the amount in controversy, including reimbursement of Liberty's settlement payment, greatly exceeds $75,000. Specifically, Liberty seeks $2,000,000 in damages from Columbia.

10. Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this action occurred in this District, including where the Columbia Policy was issued and delivered, where the Guzman Lawsuit was prosecuted, and where the Settling Insurers incurred the cost of indemnifying Prairie and Rockwell for the Guzman Lawsuit.

**THE COLUMBIA POLICY**

11. Columbia issued a contractors businessowners insurance policy, no. CTPIL0000098436, to TDH Mechanical Inc. ("TDH") for the period from April 12, 2016 to April 12, 2017 (the "Columbia Policy"). A true and correct copy of the Columbia Policy is attached hereto and incorporated herein as **Exhibit A**.[1]

12. The Columbia Policy includes a coverage form with an Insuring Agreement providing in part:

---

[1] The Columbia Policy has been paginated for ease of reference in this Complaint.

3

> A. Coverages
>
> 1. **Business Liability**
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies.

*See* Ex. A, p. 67.

13. The Columbia Policy also includes a "Contractors Businessowners Premier Endorsement" (No. CB-500 (10-14)) (the "AI Endorsement") providing in part:

> **Who Is An Insured** is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. Liability for "bodily injury" or "property damage" caused, in whole, or in part, by "your work" arising out of your ongoing operations performed for that additional insured and included in the "products-completed operations hazard."
>
> The insurance provided to the person or organization is primary insurance and we will not seek contribution from any other insurance available to that insured.

*See* Ex. A, p. 33.

## THE TDH-PRAIRIE CONTRACT

14. On or about February 9, 2017, Prairie entered into a contract with Columbia's Named Insured, TDH, for a project located at 3057 N. Rockwell, Chicago, Illinois ("TDH-Prairie Contract"). The TDH-Prairie Contract sets forth the scope of work for TDH's installation of an HVAC system at the project. A true and correct copy of the TDH-Prairie Contract is attached hereto and incorporated herein as **Exhibit B**.

15. As respects TDH's insurance obligations to Prairie, the TDH-Prairie Contract's General Conditions provide as follows:

14. [TDH] hereby assumes responsibility and liability in and for any and all damages or injury of any kind or nature whatever to all persons and to all property growing out of or resulting from the act or omission of the Subcontractor in the performance of the Work provided for in this Contract. . . . [TDH] shall further provide and maintain public liability insurance for personal injury, including death, suffered by persons other than employees, which may arise from operations under this Contract: and shall also provide and maintain property damage insurance coverage, with limits satisfactory to Owner. The limits of such liability insurance coverage shall be in the amounts of at least $1,000,000 per occurrence and $2,000,000 per project aggregate. Prior to commencement of Work, [TDH] shall furnish Owner with satisfactory evidence that such insurance is obtained and is maintained in full force and effect. . . .

15. Prior to commencing any work, [TDH] shall submit a certification of insurance acceptable to Owner naming the Owner (Rockwell Properties, LLC) and Prairie Management & Development, Inc. as Additional Insureds for the duration of the job.

16. On February 9, 2017, TDH delivered to Prairie and Rockwell a Certificate of Liability Insurance that identifies the Columbia Policy and provides that Prairie and Rockwell are additional insureds under the Columbia Policy. A true and correct copy of the Certificate of Insurance is attached hereto and incorporated herein as **Exhibit C**.

## THE GUZMAN LAWSUIT

17. The final operative complaint in the Guzman Lawsuit was the Fourth Amended Complaint at Law (the "Guzman Complaint"). It alleged in part that on March 13, 2017, Prairie was the construction manager of a project located at 3057 N. Rockwell Street, Chicago, Illinois ("Construction Site"). A true and correct copy of the Guzman Complaint is attached hereto and incorporated herein as **Exhibit D**.

18. The Guzman Complaint further so alleged that Guzman, an employee of TDH, was working at the Construction Site on March 13, 2017 when he fell through an uncovered and unguarded opening in the floor on the second floor, sustaining serious injuries. It also so alleged that Prairie "had overall responsibility for safety at the construction site, including the work area where [Guzman] was working at the time of his injuries."

5

19. The Guzman Complaint further so alleged that Prairie, by and through its agents, carelessly and negligently:

- "failed to supervise, inspect, monitor, and coordinate the work of the subcontractors on the construction site in order to prevent and protect [Guzman] from falling through the unprotected opening in the floor"; and

- "failed to properly supervise the construction site and monitor work of its subcontractors, and thereby allowed its subcontractors to engage in the unsafe practice of not covering or guarding the unmarked opening in the floor with appropriate protection which exposed Plaintiff to the risk of falling through the opening."

Exhibit D at ¶ 9.

20. Several defendants in the Guzman Lawsuit, including David Huth, individually and d/b/a H&H Contracting, and Phoenix Community Builders, Inc., filed against TDH third-party complaints alleging that it had negligently failed to train its employees on multiple issues, failed to maintain a safe workplace, failed to provide proper safety equipment, failed to supervise or inspect the Construction Site, failed to supervise the HVAC work of its employees including Guzman, failed to enforce its own safety rules, and failed to provide adequate safeguards to prevent injury to Guzman. True and accurate copies of third-party complaints filed against TDH by David Huth, individually and d/b/a H&H Contracting, and Phoenix Community Builders, Inc. are attached hereto and incorporated herein as **Group Exhibit E**.

6

**THE DUTY TO DEFEND ACTION**

21. On information and belief, Scottsdale defended Prairie in the Guzman Lawsuit, subject to a reservation of rights under a commercial general liability policy that Scottsdale issued to Rockwell Properties, LLC ("Rockwell"), a co-defendant in the Guzman Lawsuit.

22. On information and belief, Scottsdale asked Columbia to defend Prairie in the Guzman Lawsuit.

23. On information and belief, Columbia refused to defend Prairie in the Guzman Lawsuit on asserted grounds that Prairie did not qualify as an additional insured under the AI Endorsement to the Columbia Policy. Specifically, Columbia took the position that the AI Endorsement only provided coverage for Prairie's vicarious liability for TDH's negligence and did not provide coverage for Prairie's own negligence. Columbia further contended that Prairie did not even potentially qualify as its additional insured because the Guzman Complaint did not name TDH as a defendant and did not assert any vicarious liability theory against Prairie.

24. After Columbia denied coverage to Prairie, Scottsdale filed the Duty to Defend Action to obtain a judgment declaring that Columbia had a duty to defend and indemnify Prairie in the Guzman Lawsuit.

25. On August 20, 2019, judgment was entered in favor of Scottsdale and against Columbia in the Duty to Defend Action, declaring Columbia had a primary and noncontributory duty to defend Prairie and Rockwell in the Guzman Lawsuit. On August 26, 2020, the Seventh Circuit affirmed. *See Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc., et al.*, 402 F. Supp. 3d 656 (N.D. Ill. 2019), *aff'd*, 972 F.3d 915 (7th Cir. 2020).

26. Rejecting Columbia's interpretation of its AI Endorsement, the Court of Appeals held that Prairie was entitled to coverage under the AI Endorsement so long as "some fault [for Guzman's injuries] lies with TDH." 972 F.3d at 920.

27. Directly addressing the AI Endorsement language, the Seventh Circuit stated in a footnote:

> The Columbia endorsement includes this incomplete sentence: "Liability for 'bodily injury' or 'property damage' caused, in whole, or in part, by 'your work' arising out of your ongoing operations performed for that additional insured and included in the 'products-complete operations hazard.'" Based on this, Columbia argues its policy explicitly provides coverage for additional insureds only when the liability was caused, in part or in whole, by TDH's work. Scottsdale seems to accept this interpretation of the incomplete sentence. But even if Columbia's argument were based on a proper interpretation of this incomplete sentence, and even if we did not apply the canon of construing the policy in favor of the insured, we would still conclude it is possible that the liability of Prairie and Rockwell was ultimately caused, in part or in whole, by "your work," which according to the Columbia policy means TDH's work or operations performed by TDH or on its behalf, and materials, parts, and equipment in connection with such work or operations, and includes the failure to provide warnings or instructions.

*Id*. at 921 n.2.

## COLUMBIA REFUSES TO INDEMNIFY PRAIRIE

28. In the wake of the Court of Appeals' affirmance in the Duty to Defend Action, Columbia paid for Prairie's defense but repeatedly refused to indemnify Prairie. True and correct copies of correspondence from counsel for Columbia dated October 14, 2020 and November 10, 2020 are attached hereto and incorporated herein as **Exhibit F** and **Exhibit G**, respectively.

29. Columbia continued to take the position that the Columbia Policy did not provide coverage for Prairie's own negligence, despite the Seventh Circuit's holding that Prairie was entitled to coverage under the Columbia Policy so long as "some fault lies with TDH." A true and correct copy of correspondence from counsel for Columbia dated January 4, 2021 is attached hereto and incorporated herein as **Exhibit H**.

8

30. By December 2021, Columbia was aware that the evidence developed in the Guzman Lawsuit demonstrated that TDH bore "some fault" for Guzman's injuries. Specifically, and without limitation:

   a. Mr. Guzman testified at his deposition in the Guzman Lawsuit that, prior to his fall, he had complained to his supervisor at TDH about the uncovered and unguarded opening in the floor on the second floor. A true and correct copy of Mr. Guzman's deposition transcript is attached hereto and incorporated herein as **Exhibit I**.

   b. Wally Wojciech, the TDH foreman and Mr. Guzman's supervisor, testified in his deposition in the Guzman Lawsuit that he was aware of the opening in the floor days before Guzman fell through it. He also testified that he then showed it to his workers, although Wojciech failed to secure the opening. Wojciech also admitted that Guzman had complained to him about the opening, but no representative of TDH did anything to secure it. A true and correct copy of Mr. Wojciech's deposition transcript is attached hereto and incorporated herein as **Exhibit J**.

   c. Expert witnesses also cast blame on TDH for permitting unsafe conditions at the Construction Site by, among other things, failing to place protections around the floor opening prior to Guzman's fall.

31. By December 2021, Columbia was aware that defense counsel for Prairie had opined that an adverse verdict in the Guzman Lawsuit could be in the range of $6,000,000-$8,000,000. A true and correct copy of correspondence from counsel for Scottsdale is attached hereto and incorporated herein as **Exhibit K.**

9

32. By December 2021, Columbia was aware that Prairie's defense counsel had also opined that Prairie may be allocated more than 25% of the total fault, thereby triggering joint and several liability.

33. Prairie and its defense counsel in the Guzman Lawsuit made multiple requests to Columbia to settle the Guzman Lawsuit on Prairie's behalf between December 2021 and April 2022. True and correct copies of the requests attached hereto and incorporated herein as **Group Exhibit L.**

34. Despite Columbia's knowledge that TDH bore "some fault" for Guzman's injuries, and despite Columbia's knowledge that an adverse verdict against Prairie was likely, Columbia declined all requests by Prairie and its defense counsel to contribute toward any settlement of the Guzman Lawsuit on Prairie's behalf. True and correct copies of the Columbia's declinations attached hereto and incorporated herein as **Group Exhibit M.**

**LIBERTY AND PRAIRIE'S OTHER INSURERS SETTLE THE GUZMAN LAWSUIT WITHOUT COLUMBIA**

35. Liberty issued an Excess Liability Policy, no. 1000051046-06, to Prairie for the period June 10, 2016 to June 10, 2017 (the "Liberty Excess Policy"). A copy of the Liberty Excess Policy is attached hereto and incorporated herein as **Exhibit N.**

36. The Liberty Excess Policy is a true excess policy and, as such, requires Liberty only to indemnify Prairie for "loss" in excess of Underlying Insurance and all other primary-layer insurance available to Prairie, including the Columbia Policy.

37. After Columbia repeatedly refused to contribute a settlement of the Guzman Lawsuit on Prairie's behalf, Prairie asked Liberty to contribute to a settlement of the Guzman Lawsuit on Prairie's behalf.

38. On April 22, 2022, Liberty and several other insurers reached an agreement to settle the Guzman Lawsuit on behalf of Prairie in exchange for payments of $3.7 million (the "Guzman Settlement"). Liberty paid $2.3 million toward the Guzman Settlement on behalf of Prairie.

39. The Guzman Settlement was made in reasonable anticipation of Prairie's liability and was consistent with the recommendations of Prairie's defense counsel.

40. In consideration for Liberty's contribution to the Guzman Settlement, Prairie contractually assigned to Liberty all of its rights under the Columbia Policy, at law, in equity, or otherwise. A copy of Prairie's "Assignment of Rights" is attached hereto and incorporated as **Exhibit O**.

## COUNT I – BREACH OF CONTRACT

41. Liberty realleges and incorporates by reference the allegations in Paragraphs 1-40 as the allegations of this Paragraph 41.

42. The Columbia Policy is a valid and enforceable contract.

43. Pursuant to the TDH-Prairie Contract, TDH was required to maintain liability insurance and to name Prairie as an additional insured on such insurance.

44. The Columbia Policy's AI Endorsement includes as an additional insured "any person or organization for whom [TDH is] performing operations when [TDH] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [TDH's] policy" and covers such person or organization as an additional insured for "[l]iability for 'bodily injury' . . . caused, in whole, or in part, by 'your work' arising out of [TDH's] ongoing operations performed for that additional insured."

11

45. The Columbia Policy's AI Endorsement provides that the insurance provided to Prairie is primary and that Columbia will not seek contribution from any other insurance available to Prairie.

46. The Seventh Circuit held that the AI Endorsement affords primary and non-contributory coverage to Prairie so long as "some fault lies with TDH." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc., et al.*, 972 F.3d 915, 920 (7th Cir. 2020).

47. The judgment entered against Columbia in the Duty to Defend Action is preclusive and Columbia is thus collaterally estopped to re-litigate a) the requirements of the TDH-Prairie Contract or b) the interpretation of the Columbia AI Endorsement.

48. The Guzman Lawsuit sought to impose liability on Prairie for Guzman's injuries, which were caused, at least in part, by TDH's work at the Construction Site as part of TDH's operations performed for Prairie and Rockwell, *i.e.*, TDH's obligation to provide a safe workspace for Guzman, TDH's disregard of Guzman's complaints about the uncovered opening in the floor, TDH's neglect of and failure to cover or guard the opening in the floor, and TDH's failure to warn Guzman of the opening in the floor.

49. Columbia knows and has acted based on its knowledge that TDH's acts or omissions were the cause, at least in part, of Guzman's injuries, and that Guzman's injuries arose out of TDH's ongoing operations for Prairie.

50. In other words, "some fault lies with TDH" for Guzman's injuries.

51. Columbia had a duty to indemnify Prairie for the Guzman Settlement under the terms and conditions of the Columbia Policy.

12

52. Columbia breached its duty to indemnify Prairie under the Columbia Policy by anticipatorily denying coverage and refusing to indemnify Prairie for any amounts Prairie became liable to pay as damages in the Guzman Lawsuit.

53. As a result of Columbia's breach of the Columbia Policy, Prairie suffered damages in the amount of the Columbia Policy's $2 million limit of liability, which was not made available to Prairie to satisfy Prairie's liability in the Guzman Lawsuit.

54. Liberty agreed to contribute to the Guzman Settlement in reasonable anticipation of Prairie's liability in the Guzman Lawsuit.

55. The first $2 million of Liberty's contribution to the Guzman Settlement should have been paid by Columbia.

56. Liberty, individually and as Prairie's contractual assignee, is permitted to assert this claim for breach of contract against Columbia and recover contractual damages that would otherwise be available to Prairie due to Columbia's breach of the Columbia Policy.

WHEREFORE, Liberty respectfully requests that this Court enter a judgment awarding Liberty contractual damages in the amount of $2,000,000, plus pre-judgment interest and costs, and for other relief as this Court deems just and proper.

## COUNT II – EQUITABLE SUBROGATION

57. Liberty re-alleges and incorporates by reference the allegations of paragraph 1-56 as the allegations of this Paragraph 57.

58. Pursuant to the TDH-Prairie Contract, TDH was required to maintain liability insurance and to name Prairie as an additional insured on such insurance.

59. The Columbia Policy's AI Endorsement applies, in pertinent part, to "any person or organization for whom [TDH is] performing operations when [TDH] and such person or

organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [TDH's] policy" and covers such person or organization as an additional insured for "[l]iability for 'bodily injury' . . . caused, in whole, or in part, by 'your work' arising out of [TDH's] ongoing operations performed for that additional insured."

60. The Columbia Policy's AI Endorsement provides that the insurance provided to Prairie is primary and that Columbia will not seek contribution from any other insurance available to Prairie.

61. The Seventh Circuit held that the AI Endorsement affords primary and non-contributory coverage to Prairie so long as "some fault lies with TDH." *Scottsdale Ins. Co.*, 972 F.3d at 920.

62. The judgment entered against Columbia in the Duty to Defend Action is preclusive and Columbia is thus collaterally estopped to re-litigate a) the requirements of the TDH-Prairie Contract or b) the interpretation of the Columbia AI Endorsement.

63. The Guzman Lawsuit sought to impose liability on Prairie for Guzman's injuries, which were caused, at least in part, by TDH's work at the Construction Site as part of TDH's operations performed for Prairie and Rockwell, *i.e.*, TDH's obligation to provide a safe workspace for Guzman, TDH's disregard of Guzman's complaints about the uncovered opening in the floor, TDH's neglect of and failure to cover or guard the opening in the floor, and TDH's failure to warn Guzman of the opening in the floor.

64. Columbia knows and has acted based on its knowledge that TDH's acts or omissions were the cause, at least in part, of Guzman's injuries, and that Guzman's injuries arose out of TDH's ongoing operations for Prairie.

65. In other words, "some fault lies with TDH" for Guzman's injuries.

66. Columbia had a duty to indemnify Prairie for the Guzman Settlement under the terms and conditions of the Columbia Policy.

67. Columbia breached its duty to indemnify Prairie under the Columbia Policy by anticipatorily denying coverage and refusing to indemnify Prairie for any amounts Prairie became liable to pay as damages in the Guzman Lawsuit.

68. Liberty agreed to contribute to the Guzman Settlement in reasonable anticipation of Prairie's liability in the Guzman Lawsuit.

69. The insurance owed by Columbia was primary to, and non-contributory with, any insurance owed to Prairie by Liberty.

70. Any insurance owed by Liberty to Prairie was secondary to and excess of the insurance owed by Columbia.

71. The first $2 million of Liberty's contribution to the Guzman Settlement should have been paid by Columbia.

72. By paying sums to settle the Guzman Lawsuit on behalf of Prairie, Liberty discharged any liability it may have had to Prairie and at the same time discharged the liability of Columbia to Prairie for the Guzman Settlement.

73. Liberty is equitably subrogated to the rights of Prairie under the Columbia Policy.

74. Liberty, individually and as Prairie's equitable subrogee, is entitled to recover its settlement contribution from Columbia.

WHEREFORE, Liberty respectfully requests that this Court enter a judgment that Liberty is equitably entitled to recoup $2,000,000 of its settlement payments from Columbia in equitable subrogation, plus pre-judgment interest, costs, and for other relief as this Court deems just and proper.

## COUNT III – DECLARATORY JUDGMENT

75. Liberty realleges and incorporates by reference the allegations in Paragraphs 1-74 as the allegations of Paragraph 75.

76. Pursuant to the THD-Prairie/Rockwell Contract, TDH was required to name both Prairie and Rockwell as additional insureds.

77. The Columbia Policy's additional insured endorsement applies, in relevant part, to "any person or organization for whom [TDH is] performing operations when [TDH] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [TDH's] policy" and covers such person or organization as an additional insured for "[l]iability for 'bodily injury' . . . caused, in whole, or in part, by 'your work' arising out of [TDH's] ongoing operations performed for that additional insured . . . ."

78. The Columbia Policy's additional insured endorsement states that the insurance provided to Prairie and Rockwell is primary insurance and that Columbia will not seek contribution from any other insurance available to Prairie or Rockwell.

79. The Guzman Lawsuit sought to impose liability on Prairie and Rockwell arising out of TDH's operations for Rockwell and Prairie at the Construction Site.

80. The Guzman Lawsuit sought to impose liability on Prairie and Rockwell for Guzman's injuries, which were caused, at least in part, by TDH's work at the Construction Site as part of TDH's operations performed for Prairie and Rockwell, i.e., TDH's obligation to provide a safe workspace Guzman, TDH's disregard of Guzman's complaints about the uncovered opening in the floor, TDH's neglect of and failure to cover or guard the opening in the floor, and TDH's failure to warn Guzman of the opening in the floor. Columbia knows and has acted on its

16

knowledge that TDH's acts or omissions were the cause, at least in part, of Guzman's sustained injuries, and that Guzman's injuries arose out of TDH's ongoing operations for Prairie and Rockwell.

81. Columbia knows and has acted based on its knowledge that TDH's acts or omissions were the cause, at least in part, of Guzman's injuries, and that Guzman's injuries arose out of TDH's ongoing operations for Prairie and Rockwell.

82. The Court in the Guzman Lawsuit found that Guzman's causes of action for premises liability and vicarious liability against Prairie and Rockwell, which were based on Prairie and Rockwell's failure to properly supervise and monitor, could be determined by a jury.

83. Given Guzman's settlement demand of $5 million two weeks before the trial was scheduled to begin, the likelihood of a $10 million verdict against all defendants if the Guzman Lawsuit were decided by a jury, and the high probability that joint and several liability would be apply to Prairie, Liberty reasonably contributed $2.3 million towards the Guzman Settlement on behalf of Prairie. Liberty acted on reasonable anticipation of Prairie's liability to Guzman.

84. The first $2 million paid by Liberty, on behalf of Prairie, should have instead been paid by Columbia.

85. Columbia has a primary and noncontributory duty to indemnify Prairie and Rockwell for $2 million of the Guzman Settlement.

WHEREFORE, Liberty respectfully request that this Court enter an order finding and declaring that Columbia owed a duty to indemnify Prairie and Rockwell in connection with the Guzman Lawsuit, that Columbia breached its duty to indemnify Prairie and Rockwell, and that Liberty is entitled to recoup its settlement payments, plus pre-judgment interest and costs.

DATED: October 17, 2024 Respectfully submitted,

          **Nicolaides Fink Thorpe Michaelides Sullivan LLP**

By: /s/ Regina A. Ripley
Regina A. Ripley (ARDC #6275774)
David J. Rock (ARDC # 6306845)
Thomas E. Placzek (ARDC #6336565)
Nicolaides Fink Thorpe Michaelides Sullivan
10 South Wacker Drive, 36th Floor
Chicago, IL 60606
Tel: (312) 585-1400
rripley@nicolaidesllp.com
drock@nicolaidesllp.com
tplaczek@nicolaidesllp.com